IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE LOAN SERVICES INC. and THE 1993 STEVEN D. KRAVITZ FAMILY TRUST,<br><br>        Plaintiffs,<br><br>        v.<br><br>NEWITY LLC, and ACAP SME, LLC,<br><br>        Defendants. | Civil Action No. 22-cv-01255-GBW |

---

Joseph B. Cicero, Gregory E. Stuhlman, Thomas A. Youngman, CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, Delaware; Casey B. Howard, Jeffery S. Kramer, LOCKE LORD LLP., New York, NY.

      *Counsel for Plaintiffs*

Patricia L. Enerio, Gillian L. Andrews, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware; Michael R. Tein, Gaye L. Huxoll, TEIN MALONE PLLC, Coconut Grove, FL.

      *Counsel for Defendants*

## **MEMORANDUM OPINION**

September 28, 2023
Wilmington, Delaware

GREGORY B. WILLIAMS
U.S. DISTRICT JUDGE

Pending before the Court is Defendant NEWITY LLC's ("NEWITY") Motion to Dismiss

Plaintiffs The Loan Source Inc.'s ("TLS") and The 1993 Steven D. Kravitz Family Trust (the

"Trust," together with TLS the "Plaintiffs") Complaint Pursuant to Federal Rule of Civil Procedure

12(b)(6). D.I. 10. For the reasons below, the Court will DENY the Motion to Dismiss.

## I.   BACKGROUND

In 1994, TLS became one of fourteen companies to acquire a Small Business Lending

Company ("SBLC") License from the U.S. Small Business Administration ("SBA"). D.I. 1 at ¶

16. As an SBLC License holder, TLS was permitted to make SBA loans through the SBA's

Loan Guarantee Program. *Id.* at ¶ 18. Several years later, in March 2020, the Federal

Government implemented the CARES Act in response to the COVID-19 pandemic. *Id.* at ¶ 19.

To provide funds and economic relief to individuals and businesses, the CARES Act permitted

the SBA to implement a Paycheck Protection Program ("PPP") with support from the U.S.

Treasury Department. *Id.* at ¶ 20. Under the PPP, small businesses were authorized to apply for

SBA loans to cover some of their payroll expenses. *Id.* at ¶¶ 21-23. However, applications had

to be submitted through SBA lenders, like TLS. *Id.*

In May 2020, TLS began negotiating the sale of their SBLC License to ACAP SME,

LLC ("ACAP") and ACAP's principal, Luke LaHaie. As part of these negotiations, the parties

similarly discussed entering an arrangement under which ACAP would service PPP loans that

were originated by TLS. *Id.* at ¶ 26. The parties entered into two agreements in May 2020: (i) a

Stock Purchase Agreement ("May SPA"), under which ACAP agreed to purchase some or all of

the Trust's interest in TLS as well as TLS's SBLC License, and (ii) a Lender Service Provider

Agreement ("LSPA"), pursuant to which ACAP agreed to service PPP loans that were originated by TLS. *Id.* at ¶ 30-31, 39. Shortly after, TLS, the Trust, and ACAP (*hereinafter,* the "parties") entered into an Amended and Restated Stock Purchase Agreement ("SPA" or "Agreement") on or about July 10, 2020. *Id.* at ¶ 39. Pursuant to the SPA, ACAP sought to purchase TLS's SBLC license as well as certain shares of TLS owned by the Trust. *Id.* at ¶ 41. Section 9.07 of the SPA (*hereinafter*, the "assignment provision") required a party to obtain the written consent of the other party before assigning its rights or obligations under the agreement. D.I. 10 at 2. The SPA also included a non-recourse provision (*hereinafter*, the "non-recourse provision"), Section 9.13, that limited who the contract parties could enforce the SPA against. *Id.* Finally, in order to effectuate purchase of TLS's SBLC License, the SPA required the parties to seek approval from the SBA. *Id.* at ¶ 47. As part of this approval process, the SBA would evaluate ACAP's application to purchase. *Id.*

After the parties learned that ACAP's application to purchase was likely to be denied by the SBA due to a lawsuit brought by LaHaie's former employers and pending against ACAP, the application was withdrawn on November 23, 2020. D.I. 1 at ¶¶ 63-66. Still, ACAP and LaHaie remained interested in purchasing TLS's SBLC License, and the parties entered into the First Amendment to the Amended and Restated Stock Purchase Agreement (the "Amended Agreement") on or about December 30, 2020. *Id.* at ¶ 67. The Amended Agreement extended ACAP's exclusive right to purchase TLS's SBLC license in exchange for, among other things, a higher purchase price and several conditional fees. *Id.* at ¶¶ 68-84. Pursuant to Section 3 of the Amended Agreement, the parties agreed that "[e]xcept as specifically amended herein, the SPA shall continue in full force and effect in accordance with its original terms." D.I. 10 at 2.

According to Plaintiffs, LaHaie formed NEWITY sometime after October 2020.  D.I. 1 at ¶ 86.  Additionally, Plaintiffs allege that NEWITY announced on its website that "ACAP is changing its name to NEWITY." *Id.* at ¶ 88.  Plaintiffs allege that NEWITY replaced ACAP as the party TLS interacted with on a day-to-day basis and is now operating as ACAP. *Id.* at ¶ 90. Alternatively, Plaintiffs allege that ACAP assigned NEWITY all rights and obligations under the parties' agreements. *Id.*

Finally, Plaintiffs allege that ACAP/NEWITY began to breach their obligations under the parties' agreements starting on January 1, 2021 and continuing through the present. *Id.* at ¶ 91. Plaintiffs commenced this lawsuit against ACAP and NEWITY in response to these alleged breaches. *Id.*  Plaintiffs' Complaint (the "Complaint") asserts the same four claims against the two Defendants: three counts for breach of contract (the "breach of contract claims") and one count for a declaratory judgment.  On November 23, 2022, ACAP filed its answer to Plaintiffs' Complaint (the "Answer"), D.I. 12, and NEWITY filed the instant Motion to Dismiss (the "Motion to Dismiss).

## II.    LEGAL STANDARD

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021)

3

(quoting *Iqbal*, 556 U.S. at 678). But the Court will "'disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements.'" *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

In evaluating a motion to dismiss, "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)), *aff'd*, 2018 WL 11446482 (3d Cir. Apr. 6, 2018). Rule 12(b)(6) requires the court to accept all factual allegations in the complaint as true and view them in the light most favorable to plaintiff. *AbbVie Inc*, 976 F.3d at 351. The court may consider matters of public record and documents attached to, "integral to[,] or explicitly relied upon in" the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (cleaned up); *see also Spizzirri v. Zyla Life Scis.*, 802 F. App'x 738, 739 (3d Cir. 2020) (same). "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420).

## III.   DISCUSSION

In evaluating the Motion to Dismiss, the Court assumes all well-pleaded facts to be true and draws all reasonable inferences therefrom in the light most favorable to Plaintiffs. Having done so, this Court finds that Plaintiffs' Complaint sets out plausible fact-based allegations to support the breach of contract claims against Defendant NEWITY. Thus, the Court denies the Motion to Dismiss.

### A. Extrinsic Evidence

As a preliminary matter, the Court will address NEWITY's concern that Plaintiffs' response to the Motion to Dismiss presents extrinsic evidence. D.I. 19 at 1. Generally, "a court considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may consider only the allegations contained in the pleading to determine its sufficiency." *In re Asbestos Prod. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016). As an exception to this general rule, courts may rely upon "document[s] integral to or explicitly relied upon in the complaint." *In re Rockefeller Center Properties, Inc. Securities Litigation*, 184 F.3d 280, 287 (3d Cir.1999). Additionally, courts may take judicial notice of public records outside the pleadings without violating the general prohibition against extrinsic evidence. *Adkins v. Rumsfeld*, 450 F. Supp. 2d 440, 444 (D. Del. 2006). If a court is presented with any other form of extrinsic evidence and relies upon that evidence, the motion to dismiss must be converted to "one for summary judgment under Rule 56." *In re Asbestos Prod. Liab. Litig.*, 822 F.3d at 134. Here, however, the Court need not rely on extrinsic evidence to find that Plaintiffs have pled sufficient facts to survive dismissal.

In evaluating the Motion to Dismiss, this Court considers only the facts pled in Plaintiffs' Complaint and the documents explicitly relied upon by Plaintiffs in their Complaint: (i) the SPA and Amended Agreement, (ii) the 2021 name-change announcement published on NEWITY's website, and (iii) ACAP documents sent to TLS with a link to NEWITY's website. Because the Court finds the facts alleged in the Complaint alone are sufficient to defeat the Motion to Dismiss, the Court excludes all other documents referenced in Plaintiffs' response from its review.[1] Thus, the Motion to Dismiss will not be converted into a motion for summary judgment.

---

[1] The Court excluded all other extrinsic documents raised by Plaintiffs without deciding whether judicial notice was proper. *See* D.I. 19 at 2-3 (challenging Plaintiffs' submission of "marketing tools," "press releases" and documents filed in criminal proceedings). The Court agrees with TLS that the Complaint, standing alone, pleads sufficient facts to survive dismissal. D.I. 17 at 11.

Moreover, while NEWITY argues that this Court "may not rely on exhibits attached to the complaint as a substitute for pleading facts sufficient to demonstrate its entitlement to relief," the Court does not interpret this as barring it from reviewing the exhibits that Plaintiffs explicitly rely upon in their Complaint. *See* D.I. 19 at 2 (citing *Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 490 (D. Del. 2019)). Specifically, neither the 2021 name-change announcement published on NEWITY's website nor the ACAP documents linking to NEWITY's website were treated as *substitutes* to the facts pled in the Complaint. Rather, the Court finds that the documents merely support the factual allegations explicitly made in the Complaint.

Because all other disputed extrinsic documents have been excluded from the Court's evaluation, the Motion to Dismiss will not be converted into a motion for summary judgement.

## B. Breach of Contract Claims

"In order to survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (footnote and citations omitted). Under Delaware law, "only a party to a contract may be sued for breach of that contract." *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 172. However, a company remains liable for its contractual "rights or obligations" if it merely changes its name. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stauffer Chem. Co.*, C.A. No. 87C-SE-11, 1991 WL 138431, at *2 (Del. Super. July 15, 1991). Additionally, "an assignee of a contract who assumes the obligations which the contract imposes on his or her assignor becomes directly liable on the contract to the other contracting party." *Hursey Porter & Assocs. v. Bounds*, No. CIV. A. 93C-01-091, 1994 WL 762670, at *17 (Del. Super. Ct. Dec. 2, 1994). Some courts require

an assignee to make an express assumption of obligations before the assignee can be bound to the terms of an Agreement. *See Gruntal & Co., Inc. v. Steinberg*, 854 F. Supp. 324, 335 (D.N.J. 1994) (internal quotation marks omitted), *aff'd*, 46 F.3d 1116 (3d Cir. 1994) ("Under New York law, the assignee of rights under a bilateral contract is not bound to perform the assignor's duties unless he expressly assumes to do so.").

According to NEWITY, Plaintiffs' breach of contract claims against NEWITY must be dismissed because Plaintiffs cannot, as a matter of law, prove the existence of a contractual relationship between TLS and NEWITY. D.I. 11 at 4-5. NEWITY claims that only Defendant ACAP is a named party to the SPA and the Amended Agreement. *Id.* In response, Plaintiffs argue that NEWITY is a party to the SPA because ACAP became NEWITY through a name-change. D.I. 17 at 9-11. Alternatively, Plaintiffs allege that NEWITY assumed ACAP's rights and obligations under the SPA; thus, making NEWITY liable for breach of the SPA. *Id.* at 12-14.

In ruling on the Motion to Dismiss, the Court finds that Plaintiffs have pled sufficient facts to support their claim that NEWITY is ACAP or, alternatively, that NEWITY was assigned ACAP's rights and obligations under the SPA. Thus, the Motion to Dismiss is denied.

### a. Plaintiffs allege that ACAP is NEWITY.

Plaintiffs contend that NEWITY is a party to the SPA because NEWITY *is* ACAP. *Id.* at 9. The Court finds that this allegation is plausible. In support of their argument, Plaintiffs allege that an announcement posted to NEWITY's website revealed that ACAP was changing its name to NEWITY. D.I. 1 at ¶ 88. According to Plaintiffs, NEWITY notes in this announcement that "[w]e've changed our name, however our dedication to our members and partners remains the same." D.I. 17 at 10. Plaintiffs also argue that written communication provided to TLS on ACAP documents included links to NEWITY's website. D.I. 1 at ¶ 89. When taken as true and viewed

in the light most favorable to Plaintiffs, these facts give rise to a plausible inference that ACAP became NEWITY through a name-change.

The Court does recognize that some facts alleged by Plaintiffs may contradict their name-change theory. For example, the Complaint refers to NEWITY and ACAP as "limited liability companies organized under the laws of the state of Delaware." *Id.* at ¶12. Thus, some alleged facts may imply that NEWITY and ACAP are distinct corporate entities, both of which remain in existence. Regardless, "[t]he purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." *Smith v. Delaware First Fed. Credit Union*, 395 F. Supp. 2d 127, 129 (D. Del. 2005). "To that end, a Rule 12(b)(6) motion should be granted only when 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Walker v. The News J.*, No. C. A. 06-138-MPT, 2008 WL 766788, at *2 (D. Del. Mar. 24, 2008) (citations omitted). Plaintiffs' reference to NEWITY and ACAP as "companies" alone does not convince this Court beyond doubt that Plaintiffs cannot prove that ACAP became NEWITY through a name-change.

Therefore, the Court is satisfied that Plaintiffs have pled sufficient facts to support their claim that NEWITY is ACAP. In particular, the Court is convinced that the alleged announcement of name-change published to NEWITY's website makes it plausible that NEWITY and ACAP are the same entity. Of course, Plaintiffs will be required to prove this allegation with sufficient evidence in order to succeed on this claim, and proving name-change will require Plaintiffs to show that ACAP and NEWITY are not separate entities. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stauffer Chem. Co.*, 1991 WL 138431, at *2 (Del. Super. Ct. July 15, 1991) (citing 6 W. Fletcher, Cyclopedia of the Law of Private Corporations § 2456 at 264-5 (rev. perm. ed. 1989)) ("The corporation, upon [a] change in its name, is in no sense a new corporation, nor

the successor of the original one, but remains and continues to be the original corporation.  It is the same corporation with a different name, and its character is in no respect changed.").  At this stage of the pleadings, however, the Court finds that Plaintiffs have presented more than a sheer possibility that a name-change has occurred.

### b. **Plaintiffs allege that NEWITY is an Assignee**.

In the alternative, Plaintiffs allege that NEWITY is a party to the SPA because it was assigned ACAP's rights and obligations under the Agreement.  D.I. 17 at 12-13.  In response, NEWITY argues that Plaintiffs have not pled sufficient facts to support their claim that an assignment took place between ACAP and NEWITY.  D.I. 19 at 5-6.  The Court disagrees. NEWITY also argues that any breach of contract claim against NEWITY is barred as a matter of law by the non-recourse provision of the SPA.  *Id.* at 6-9.  Again, the Court disagrees.  Thus, for the reasons discussed in more detail below, the Court denies the Motion to Dismiss under Plaintiffs' alternative ground that NEWITY is an assignee.

Plaintiffs allege that ACAP *assigned* its rights and obligations under the SPA to NEWITY. D.I. 17 at 12.  Therefore, according to Plaintiffs, NEWITY is an assignee.  *Id.*  In response, NEWITY notes that the SPA contains an anti-assignment clause that requires TLS's consent before ACAP can assign its rights and obligations under the Agreement.  D.I. 11 at 6.  NEWITY claims that TLS never consented to an assignment from ACAP to NEWITY.  *Id.*  Plaintiffs do not dispute this point.  D.I. 17 at 13-14.  Instead, Plaintiffs refute NEWITY's claim that an assignment cannot occur unless ACAP received written consent to assign.  *Id.*  According to Plaintiffs, ACAP can assign its rights and obligations under the SPA without TLS's consent and doing so would merely constitute a breach of the Agreement.  *Id.*  Lack of consent, according to Plaintiffs, does not mean that an assignment did not take place.  *Id.*  The Court finds this to be a plausible argument.  *See*

*Se. Chester Cnty. Refuse Auth. v. BFI Waste Servs. of Pennsylvania, LLC*, 2017 WL 2799160, at

\*5 (Del. Super. Ct. June 27, 2017) ("When a contract limits a party's right to assign instead of the

power to do so, the assignment is valid and enforceable but generates a breach of contract action

that the non-assigning party may bring against the party assigning its interest."). Therefore, at this

stage, evidence of lack of consent does not defeat Plaintiffs' allegation that NEWITY is an

assignee.

   NEWITY contends that Plaintiffs have not pled sufficient evidence to support their

allegation that NEWITY is an assignee. D.I. 11 at 5. In support of its argument, NEWITY alleges

that Plaintiffs plead only on "information and belief" that ACAP assigned NEWITY its obligations

and rights under the SPA. *Id.* According to NEWITY, Plaintiffs cannot plead assignment on

"information and belief" because TLS's consent was required to make an assignment under the

anti-assignment clause of the Agreement. D.I. 19 at 6. Thus, NEWITY argues "the requisite facts

regarding an alleged transfer of rights and obligations under the agreements are not peculiarly

within Defendants' knowledge or control." *Id.* However, as this Court explained above, Plaintiffs

plausibly allege that an assignment can occur and in fact has occurred without their knowledge

and consent. D.I. 17 at 13-14. Taking this allegation to be true, the Court agrees that "[o]nly the

Defendants" would therefore "know the precise nature of their corporate relationship." *See id.* In

other words, the requisite facts supporting Plaintiffs' assignment theory would be peculiarly within

Defendants' control. Yet, neither the Motion to Dismiss nor ACAP's filed answer explain or

clarify the relationship between the two. *See* D.I. 12 at ¶¶ 86-90. Where, as here, Defendants

"have provided only a general denial . . . rather than facts about the organization and relationships

between the various defendant entities," this Court has allowed allegations to be made by a plaintiff

under information and belief. *See Intellectual Ventures I LLC v. Toshiba Corp.*, 66 F.Supp.3d 495, 499 (D. Del. 2014).

Moreover, Plaintiffs do support their allegation of assignment with sufficient facts. In the Complaint, Plaintiffs allege that NEWITY was formed by ACAP's principal, Luke LaHaie; that "NEWITY and ACAP share numerous personnel, including executives;" that "NEWITY announced on its website that 'ACAP is changing its name to NEWITY;'" and that several communications sent to TLS from ACAP following NEWITY's creation contained links to NEWITY's website. D.I. 1 at ¶¶ 86-90. This matter is readily distinguishable from *Magnolia's at Bethany, LLC v. Artesian Consulting Eng'rs, Inc.*, cited by NEWITY,[2] where plaintiffs alleged that defendant implicitly assumed liabilities stemming from a lawsuit by posting an advertisement to Facebook three months before the relevant lawsuit had even been filed. *See* 2011 WL 4826106, at *2 (Del. Super. Ct. Sept. 19, 2011). In the instant action, Plaintiffs allege that the SPA was signed before ACAP transferred its contractual rights and obligations to NEWITY. D.I. 1 at ¶ 86. Importantly, Plaintiffs also allege that NEWITY announced the name-change on its website and noted in that announcement that "[w]e've changed our name, however **our dedication to our members and partners remains the same**." D.I. 17 at 10 (emphasis added). Viewing these facts in the light most favorable to Plaintiffs, the Court does not agree that the announcement made to NEWITY's website was intended solely to "solicit business." *See* D.I. 19 at 5 (arguing that "the statement on NEWITY's website was an advertisement that was designed to solicit business, not an expression of its intent to assume ACAP's liabilities under the SPA."). Rather, the Court finds it plausible that the announcement was released "to [ACAP's] members and partners" as an expression of NEWITY's intent to take on ACAP's

---

[2] See D.I. 19 at 5 (arguing that *Magnolia* "alleg[es] similar facts] to this matter).

contractual obligations.[3] Therefore, Plaintiffs have pled sufficient facts to support their assignment claim.

Finally, assuming that NEWITY is an assignee, the Court finds that Plaintiffs' breach of contract claims are not barred as a matter of law by the non-recourse provision of the SPA. The non-recourse provision states that no "Affiliate of any party hereto, or any of their successors or **permitted assigns**, shall have any liability for any obligations or liabilities of any party hereto under this Agreement or for any claim or action based on, in respect of or by reason of the transactions contemplated hereby." D.I. 11 at 2 (emphasis added). Given that Plaintiffs contend that NEWITY's assignment was done without consent, the Court finds it plausible that Plaintiffs could be granted relief by showing that the non-recourse clause applies only to "permitted assigns," which Plaintiffs have alleged NEWITY is not. Therefore, Plaintiffs are not barred as a matter of law from alleging breach of contract claims against NEWITY under their theory of assignment.[4]

## IV.    CONCLUSION

For all the foregoing reasons, the Court denies the Motion to Dismiss. The Court will issue an Order consistent with this Memorandum Opinion.

---

[3] Additionally, *Bethany* is further distinguishable from this matter because this Court does not share the same concerns as to whether defendant "was even aware of [the] liabilities at the time it allegedly assumed them." *Bethany*, 2011 WL 4826106, at *2. Here, Plaintiffs have alleged that NEWITY was formed by ACAP's CEO and shared several of the same executives as ACAP. D.I. 1 at ¶¶ 86-87. Therefore, the Court finds it plausible that NEWITY was aware of the SPA at the time it allegedly accepted assignment of ACAP's obligations under the Agreement.

[4] Again, the standard on a Motion to Dismiss "is not whether "a plaintiff will ultimately prevail." *Thibault v. Delaware Tech. & Cmty. Coll.*, No. CA 11-1080-MPT, 2012 WL 2073847, at *1 (D. Del. June 8, 2012) (citation omitted). And nothing in this Court's Opinion should be interpreted as opining on whether Plaintiffs should succeed in any of their breach of contract claims against Defendant NEWITY. Rather, the Court need only be convinced that the Complaint presented "enough facts to raise a reasonable expectation that discovery will reveal evidence" in support of Plaintiffs' claims. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Viewing the facts as they are pled in the Complaint as true, the Court finds that Plaintiffs meet this standard.