IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE LOAN SOURCE INC. and THE 1993 STEVEN D. KRAVITZ FAMILY TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>NEWITY LLC and ACAP SME, LLC,<br><br>Defendants.<br><hr>ACAP SME, LLC,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>THE LOAN SOURCE INC. and THE 1993 STEVEN D. KRAVITZ FAMILY TRUST,<br><br>Counterclaim Defendants. | Civil Action No. 22-1255-GBW |

## MEMORANDUM ORDER

AND NOW, this 3rd day of July 2025, having reviewed and considered the respective filings of Plaintiffs The Loan Source Inc. ("TLS") and the 1993 Steven D. Kravitz Family Trust (the "Trust") (collectively "Plaintiffs") and Defendants ACAP SME, LLC ("ACAP") and Newity LLC ("Newity") (collectively "Defendants") concerning Plaintiffs' Motion to Quash Subpoena to Velocity Financial, Inc. or, in the Alternative, for a Protective Order Limiting the Scope of Discovery (D.I. 84) (the "Motion"), which has been fully briefed (D.I. 84, D.I. 87, D.I. 92), the Court HEREBY DENIES the Motion.

I.  **BACKGROUND**

TLS is a licensed Small Business Lending Company ("SBLC"). D.I. 55 ¶ 19 ("Compl."). SBLCs are licensed by the U.S. Small Business Administration ("SBA"). Compl. ¶ 19. An SBLC license allows a lending organization, like TLS, to underwrite small business loans that are guaranteed by the federal government, which reduces the level of risk to the lender. *Id.* at ¶ 23. Here, Plaintiffs and Defendants entered into a Stock Purchase Agreement ("SPA") whereby Defendants would purchase TLS and its SBLC license.[1] *See* D.I. 84 at 2; D.I. 87 at 2.

Plaintiffs filed a complaint against Defendants on September 22, 2022 claiming, *inter alia*, breach of the contract for violating the terms of the SPA. D.I. 1. On January 1, 2023, Defendants attempted to terminate the SPA, claiming that the closing date for the SPA had passed. D.I. 87 at 2. Plaintiffs contend that Defendants' purported termination was ineffective in part because Defendants were in material breach of the SPA. D.I. 84 at 3. Plaintiffs also claim that, on the same day, TLS properly terminated the SPA under a termination provision entitling Plaintiffs to payment of a break-up fee. After this termination, Plaintiffs claim they were free to negotiate the sale of their SBLC license with other potential buyers. *Id.* Plaintiffs filed an amended complaint ("Amended Complaint") on June 25, 2024. D.I. 55. Defendants filed an answer with affirmative defenses and counterclaims on July 10, 2025. D.I. 58.

During document production, Defendants learned that TLS was in negotiations with third-party Velocity Financial, Inc. ("Velocity") and that Velocity was interested in purchasing TLS'

---

[1] The parties dispute whether Defendant Newity entered into this agreement. *See* D.I. 87 at 2 (Defendants claiming that ACAP and Newity are separate companies that conduct completely different lines of business). Because that dispute is not relevant to this Motion, the Court will refer to Defendants generally for clarity.

2

stock and SBLC license. D.I. 87 at 3. On January 7, 2025, Defendants served a subpoena on Velocity seeking documents and deposition testimony (the "Velocity Subpoena") (D.I. 77). The Velocity Subpoena seeks two broad categories of documents: (1) all documents and communications "related to TLS"; and (2) all communications between Velocity and Plaintiffs, including individual members of TLS. *See* D.I. 84, Ex. A at 6. The Velocity Subpoena also seeks deposition testimony related to a variety of topics specifically related to TLS' business, including discussion of "TLS, TLS's equity, TLS's SBLC license, and/or TLS's SBA 7(a) loan portfolio," negotiations with TLS regarding a potential transaction, and all other communications between Velocity and Plaintiffs (including TLS' members). *Id.*

In a January 10, 2025 email correspondence, Defendants stated that "[i]f TLS agrees to produce all of the requested documents sought from Velocity," Defendants would "consider withdrawing all or a portion of the document subpoena." D.I. 84-3 at 1-2. On January 25, 2025, TLS and Velocity executed a letter of intent for a sale of TLS' equity, SBLC license, and 7(a) loan portfolio to Velocity. D.I. 87 at 3. Plaintiffs filed this Motion on January 29, 2025. D.I. 84. Defendants filed a response on February 12, 2025 (D.I. 87), and Plaintiffs filed a reply on February 19, 2025 (D.I. 92).

## II.   LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir.1999).

Federal Rule of Civil Procedure 45(d)(3)(B)(i) permits courts to quash or modify subpoenas that require the disclosure of confidential commercial information. Fed. R. Civ. P. 45(d)(3)(B)(i). A party can have standing to challenge a nonparty subpoena on these grounds when it when it "claims some personal right or privilege with regard to the documents sought." *Verisign, Inc. v. XYZ.com, LLC*, No. CV 15-MC-175-RGA-MPT, 2015 WL 7960976, at *2 (D. Del. Dec. 4, 2015). Further, Rule 26(b)(2)(C) requires the Court to limit discovery if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

When evaluating a motion to quash and/or limit the scope of subpoena, courts must balance "(1) relevance, (2) need, (3) confidentiality, and (4) harm." *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002). "The party seeking to quash the subpoena bears the burden of persuasion." *ECB USA, Inc. v. Savencia, S.A.*, No. 19-cv-00731 (GBW), 2025 WL 487426, at *5 (D. Del. Feb. 13, 2025) (citation omitted). The party seeking the discovery must establish both the relevance and the necessity of the information it seeks, and "where proof of either relevance or need is not established, discovery is properly denied." *Mannington Mills*, 206 F.R.D. at 528 (citation omitted). After the moving party has shown relevancy and need, the court "must balance the need for the information against the injury that would ensue if disclosure is ordered." *Taro Pharm. U.S.A., Inc. v. Perrigo Israel Pharm. Ltd.*, No. 1:14-CV-989-RGA, 2015 WL 7737310, at *2 (D. Del. Dec. 1, 2015) (citing *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 107 F.R.D. 288, 293 (D. Del. 1985)).

## III. DISCUSSION

Plaintiffs contend that the Court should quash the Velocity Subpoena because 1) the Velocity Subpoena seeks information that is not relevant to this case and 2) Defendants have not established that they need the information. D.I. 84 at 5-6. Further, Plaintiffs assert that, even if the information is relevant and needed by the Defendants, the Court should grant Plaintiffs' Motion because the subpoena burdens non-party Velocity. *Id.* at 6. In the alternative, Plaintiffs request the Court to enter a protective order "(1) limiting the scope of the subpoena to materials dated before January 1, 2023; and (2) staying Velocity's response to the subpoena until and unless Defendants demonstrate that they sought this information from Plaintiffs first." *Id.* The Court addresses each argument in turn.

### A. The Velocity Subpoena Seeks Relevant Information

Plaintiffs contend that "the Velocity Subpoena seeks wholly irrelevant information." *Id.* Because the Velocity Subpoena "requests documents and testimony related to a potential transaction . . . that was negotiated after Plaintiffs terminated the SPA with Defendants on January 1, 2023," Plaintiffs assert that the information requested in the Velocity Subpoena cannot be relevant to the claims in this case. *Id.* Plaintiffs are incorrect. In the Amended Complaint, Plaintiffs allege that they "fully complied with all the SPA's terms or were excused from performance by Defendants' prior, material breaches." Compl. ¶ 137. Defendants claim that information from Velocity could show that Plaintiffs violated the exclusivity provision in Section

5.16 of the SPA, and that such information would also be relevant to ACAP's affirmative defense of failure to act.[2] D.I. 87 at 8-9.

Importantly, Defendants maintain that the information they seek concerning communications or events after the January 1, 2023 termination of the SPA is relevant because it is possible that TLS began communicating with Velocity before the SPA termination, and the post-termination communications could indicate when the relationship between TLS and Velocity began. This possibility is especially acute since, as the Defendants highlight, there were only 15 business days for TLS and Velocity to "have established a relationship, negotiated and executed a letter of intent, generated a Lender Assessment Plan for Velocity, and provided their letter of intent and Lender Assessment Plan to the SBA." D.I. 87 at 8; *see Cash Today of Texas, Inc. v. Greenberg*, No. CIV.A. 02-MC-77-GMS, 2002 WL 31414138, at *2 (D. Del. Oct. 23, 2002) ("[T]he evidence sought may have some 'possible bearing upon the issues' in the pending litigation." (quoting *Hercules Powder Co. v. Rohm & Haas Co.*, 3 F.R.D. 302, 304 (D. Del. 1943))).

On the other hand, Plaintiffs claim that this information is not relevant to the question of whether Plaintiffs were in breach of the SPA before its termination because Defendants have allegedly already received a document that proves the answer in the negative. D.I. 92 at 5. Because of that document, Plaintiffs assert that "[t]here is nothing to suggest that Plaintiffs engaged in negotiations with Velocity about the sale of its SBLC license prior to January 1, 2023." However, Plaintiffs are arguing the wrong standard. In discovery, Defendants do not meet the relevance

---

[2] The Court need not address the parties' arguments whether this information is relevant to the affirmative defenses of setoff and mitigation of damages. *See* D.I. 87 at 8-9; D.I. 92 at 4-5. The Court also does not need to address at this time Plaintiffs' argument that an unclean hands defense is unavailable to Defendants in this case. *See* D.I. 92 at 4.

standard by having to prove their claims. For information to be relevant, it merely needs to have "some possible bearing upon the issues." *Cash Today of Texas*, 2002 WL 31414138, at *2.

In the alternative, Plaintiffs contend that "the Court should issue a protective order limiting the Velocity Subpoena to information dated before January 1, 2023." D.I. 92 at 6. However, because Defendants have demonstrated the relevance of information concerning communications or events after January 1, 2023, this contention fails.

### B. The Velocity Subpoena Does Not Unnecessarily Seek Information from a Nonparty

Plaintiffs claim that the Velocity Subpoena is improper because it unnecessarily seeks information from a nonparty and that the Defendants have not established the necessity of this information. D.I. 84 at 8. Specifically, Plaintiffs assert that Defendants cannot establish necessity because "Defendants should have sought [the information] from Plaintiffs before unnecessarily burdening" nonparty Velocity. *Id.* But Plaintiffs do not contest that Defendants' Request for Production ("RFP") No. 15 sought documents related to Plaintiffs' allegation that Plaintiffs "fully complied with all the SPA's terms or were excused from performance by Defendants' prior, material breaches." D.I. 87 at 12. Moreover, Plaintiffs tellingly never address Defendants' assertion that "Defendants offered to withdraw all or a portion of the Velocity Subpoena for documents if Plaintiffs agreed to produce them." *Id.* at 13. Indeed, Plaintiffs never produced the documents sought from RFP No. 15 that are also sought by the Velocity Subpoena. Therefore, because Defendants have shown that the requested documents are not available from the parties due to Plaintiffs' unwillingness to produce the documents themselves, Defendants have demonstrated the necessity of obtaining the same documents from third-party Velocity. *Cf. Joy Techs., Inc. v. Flakt, Inc.*, 772 F. Supp. 842, 849 (D. Del. 1991) (granting a protective order because

the plaintiff did not demonstrate that "it has a specific need for evidence available only from" third parties).

### C. Plaintiffs Have Not Shown with Specificity That an Injury Will Occur

Plaintiffs assert that the Court should quash the Velocity Subpoena because it seeks the disclosure of confidential commercial information that would cause harm outweighing the information's value. D.I. 84 at 9. However, this assertion fails because Plaintiffs have not shown good cause for a protective order. In the context of discovery, it is well-established that a party wishing to obtain an order of protection over discovery material must demonstrate that "good cause" exists for the order of protection. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (citing Fed. R. Civ. P. 26(c)(1)). Good cause means "that disclosure will work a clearly defined and serious injury to the party seeking closure," and that "injury must be shown with specificity." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994).[3]

Here, the parties disagree over whether they are competitors with each other, but even assuming that they are, Plaintiffs have not demonstrated how the existing Confidentiality Agreement and Order (D.I. 44) in this case is inadequate to prevent injury from the information sought by the Velocity Subpoena. *See Enzo Life Scis., Inc. v. Digene Corp.*, No. CIV.A. 02-212-JJF, 2003 WL 21402512, at *6 (D. Del. June 10, 2003) (denying request for a new protective order when the movant had not met its burden of proof and when the existing protective order was sufficient); *see Cash Today of Texas, Inc. v. Greenberg*, No. CIV.A. 02-MC-77-GMS, 2002 WL 31414138, at *3 (D. Del. Oct. 23, 2002) (stating that blanket and generalized assertions of

---

[3] This standard also applies to Plaintiffs' Rule 45 argument because this Court treats a motion "to quash a subpoena [on a nonparty], in essence, [] the same as moving for a protection order that such discovery not be allowed." *Mannington Mills*, 206 F.R.D. at 529.

confidentiality, absent allegations regarding specific harm, are not sufficient to sustain a motion to quash). Thus, Plaintiffs' request to quash the Velocity Subpoena or, in the alternative, for a protective order is denied.

\* \* \*

WHEREFORE, at Wilmington this 3rd day of July 2025, IT IS HEREBY ORDERED that Plaintiffs' Motion to Quash Subpoena to Velocity Financial, Inc. or, in the Alternative, for a Protective Order Limiting the Scope of Discovery (D.I. 84) is DENIED.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE